**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| MICHAEL SALCEDO,<br><br>                    Plaintiff,<br>v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE A,<br><br>                    Defendants. | Case No. 24-cv-12519<br><br>Judge Matthew Kennelly |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Michael Salcedo ("Plaintiff") through his attorneys of record, hereby submits this response to Defendant GuangZhouYangZhuShangMaoYouXianGongSi,("Defendant")'s Motion to Dismiss (Dkt. 32), whom is identified as Defendant No. 152 on the Schedule A to the Complaint.

**I.      Defendant's initial statements are irrelevant and do not warrant a motion to dismiss.**

Defendant states that it is a Chinese company based in China, selling into the United States, and specifically into Illinois (Exhibit B, see also, Dkt. 15, Ex. 152), operating on Walmart.com, a third-party marketplace. Defendant's Motion ("Motion"), pg. 1. Defendant's motion's opening statements claim that Defendant purchased the infringing product at issue from another third-party marketplace, called 1688.com. As Defendant alleges, 1688.com is owned and operated by the Alibaba Group, a Chinese company behind AliExpress and Alibaba that other Defendants to this action operate on, and is known to be one of the most problematic online marketplaces for counterfeit goods imported into the U.S. See Exhibit A, *2021 Review of Notorious Markets for Counterfeiting and Piracy*, Office of the United States Trade Representative Executive Office of the President (2021).

Defendant admits it bought the accused product within China from an unknown source, where no authorized licensees of Plaintiff's IP exist, and thereafter decided to sell the product into Plaintiff's home country without authorization by Plaintiff, which infringes on Plaintiff's copyright at issue. Defendant's claims that it "ha[s] no knowledge of [Plaintiff's] U.S. copyright" is not persuasive, as it is well settled that ignorance is no defense to the law. Indeed, Defendant's ignorance claim is hardly believable, considering that it also uses Plaintiff's trademark, ALPHABET LORE in the listing title of the accused product. Though Plaintiff does not plead any Lanham Act claims in the current action, it clearly shows that Defendant was trying to pass off its goods as authentic products of the Plaintiff's, and that Defendant was well aware of Plaintiff's brand and distinct copyrighted designs. Nevertheless, Defendant's argument is misplaced as that is not the basis of its Motion and therefore it should be disregarded.

## II.     Joinder is proper and does not prejudice Defendant in any way.

All Defendants are properly joined to this action Under Federal Rule of Civil Procedure 20(a)(2). "In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true." *Desai v. ADT Sec. Servs., Inc.*, 2011 WL 2837435, at *3 (N.D. Ill. July 18, 2011) (quoting *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009)).  Pursuant to 20(a)(2), Defendants may be joined in one action if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2).

"The Seventh Circuit has favored liberal joinder of parties where appropriate." *Rolex Watch, USA, Inc. v. Afzal*, No. 90 C 5637, 1992 WL 51006, at *1 (N.D. Ill. Mar. 5, 1992) citing *Russo v. Bache Halsey Stuart Shields, Inc.,* 554 F.Supp. 613, 616 (N.D.Ill. 1982). "Moreover, the

principles of judicial economy dictate that by joining together, plaintiffs are able to have their case adjudicated in the most efficient manner designed to take up the least amount of Court time and attention." *Id*. (citing *Mosley v. General Motors Corporation,* 497 F.2d 1330 (8th Cir.1974)).

It has also been found that "The Supreme Court and Seventh Circuit have noted that there is no objective way to divide the world into 'transactions or occurrences.'" *Bose Corp. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 334 F.R.D. 511, 513 (N.D. Ill. 2020). "The proper analysis is an investigation of the fairest and most efficient way for a plaintiff to seek relief for the harm they have alleged." *Id*. citing *Chavez v. Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001). To determine whether the rights asserted arise out of the same transaction or occurrence, courts should "consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007) (cleaned up). Courts generally find that claims against different defendants arose out of the same transaction or occurrence where there is a "logical relationship between the separate causes of action." *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012); *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994) (discussing the "same transaction or occurrence" requirement in the context of Rule 13). *See also* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1653 (3d ed. 2001); *Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191, 201 (N.D. Ill. 2013). Claims have a logical relationship when there is a "substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *In re EMC Corp.*, 677 F.3d at 1358. Simply put, courts are tasked with determining whether it makes sense for the parties and claims to be litigated in the same case. *Bose Corp.*, 334 F.R.D. at 513. And this Court "has

'considerable discretion' and 'flexibility' in determining whether the plaintiff has plausibly alleged such a relationship." *Id*. citing *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018).

Here, as set forth above, all Defendants operate e-commerce stores selling and offering to sell products using Plaintiff's copyright, which Plaintiff registered with the United States Copyright Office. The Defendants use the same or very similar language in their e-commerce advertising. Many Defendants use similar, if not identical, pictures, in some cases Plaintiff's pictures in promoting the sales of the infringing products. This is merely further evidence of Defendant's intent to tread on the goodwill of Plaintiff's brand. Defendants also have taken steps to operate anonymously so as to frustrate Plaintiff's ability to determine each Defendant's true identity. All Defendants appear to be operating overseas, making researching and identifying them exceptionally difficult, if not impossible. Specifically, the Defendant here, has not pled any facts to differentiate itself from others. Aside from a declaration explaining where the infringing product was purchased from it provides no compelling reason that joinder is improper – in fact, it only confirms the fact that the infringing product was purchased from another counterfeiter – just fueling the fire of the online counterfeit market.

The exact same questions of law and fact are common to all Defendants, namely, does Plaintiff have a valid copyright, and was that protected work copied by the advertising, sale, or both of products utilizing the Plaintiff's Alphabet Lore copyrighted designs. Because Plaintiff has accused each and every Defendant of infringing the same work, each and every Defendant is entitled to raise the identical legal question of the scope and validity of Plaintiff's copyright rights. To individually file actions against each Defendant separately would not only burden Plaintiff, but would also burden the Court, the public, and, in many cases, the Defendants, as many act in concert and engage in litigation jointly in many of these cases. It also would be incredibly difficult for

Plaintiff to enforce its federal rights under the Copyright Act, as filing a single suit against every online counterfeiter would make it nearly impossible to control in the aggregate, and would be too costly to do so. Conversely, such a restriction would wildly benefit the counterfeiters, leading to even more counterfeiting that occurs today. Even despite these actions frequently disabling the accounts of alike Defendants and enjoining them from further infringement, it is incredibly easy for them to open a new account, under a new name, and email, and continue their operations. Sueing a single Defendant vs. including them in the case at bar would have no effect on their ability to defend the action, as Defendant makes apparent by its lack of argument. Even by the end of this litigation, Plaintiff will be left with little to grasp when it comes to the true identity of the operators of the e-commerce store.

Courts should permit joinder when it "will comport with the principles of fundamental fairness," and should not permit joinder if it "would create prejudice, expense or delay." *Chavez*, 251 F.3d at 632. Plaintiff has adequately pled the reasons that joinder is proper and fundamentally fair. However, The Motion to Dismiss contains no averment that Defendant is now or will ever be prejudiced by continued joinder in a single action. All facts point to the manner of joinder being in the best interest of all parties, and the Court, as most efficient in time, cost, and attention. Defendant does not plead one single reason as to how or why the joinder would prejudice it individually. This Court should follow *Bose Corp.* 334 F.R.D. 511, where fellow Judge Durkin opined why joinder in a case similar to the one at bar is proper and most effective, especially where "defendants are [not] prejudiced by permitting joinder." Simply because Defendant does not allege a connection to another Defendant does not mean that their actions in the collective do not arise from the same transaction or occurrence. As stated by the court in *Bose*, "an "occurrence" of mass harm easily can be inflicted even if there is no express "transactional" coordination among the

5

attackers." *Id.* at 516. Additionally, in comparing the type of case at bar to the popular BitTorrent litigation where similar number of defendants are frequently joined, the Court stated:

> "Bose has plausibly alleged such a harmful occurrence here. Defendants allegedly take advantage of a set of circumstances—the anonymity and mass reach afforded by the internet and the cover afforded by international borders—to violate Bose's trademarks with impunity. Like the BitTorrent swarms, it is plausible that Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they do not engage in direct communication or coordination. The more of them there are, the more difficult it is for Bose to successfully defend its trademarks…"

*Id.* Defendants cannot continue to be able to operate, in the aggregate, mass counterfeiting operations, and be shielded from liability by facially arguing that the joinder somehow affects them individually. As Defendant has failed to show why joinder would prejudice it, this Court should find that joinder is proper.

### III. The method of service was proper and rightly granted by this Court.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. See *Monco v. Zoltek Corp.*, 2018 WL 3190817, at *4 (N.D. Ill. Apr. 24, 2018); *Strabala v. Zhang*, 318 F.R.D. 81, 115 (N.D. Ill. 2016); see also *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015-16 (9th Cir. 2002). Rule 4 also does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). Id. at 1014-15. Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id*.

Further, this Court has already found that service under the Hague Convention is optional under Fed. R. Civ. P. 4. *Hangzhou Chic Intelligent Tech. v. P'ship*, No. 20-cv-4806, at *3 (N.D. Ill. Apr. 1, 2021); see also *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009)

6

("Plaintiffs are not required to first attempt service through the Hague Convention."); *In re LDK Solar Secs. Litig.*, 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority). Unlike Defendants' contentions, the "[Hague] Convention does not affirmatively authorize, nor does it prohibit, service by email." *Commodity Futures Trading Comm'n v. Caniff*, No. 19-cv-2935, 2020 WL 956302, at *6 (N.D. Ill. Feb. 27, 2020); see also *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant).

Similarly, a number of courts, including within the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Rio Props., Inc.*, 284 F.3d at 1018; see also *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (allowing e-mail service); see also *Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (holding that "in certain circumstances … service of process via electronic mail … is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure").

The "scofflaw" described by the court in *Rio Props* applies to Defendants here. It is unlikely that service under the Hague Convention would be successful, as Plaintiff does not know whether any addresses currently attributable to Defendants are even valid. The address advertised

on Defendant's business page is not even a full valid address. See Ex. B. Further, Defendant cannot be afforded the luxury of operating an entire business through e-commerce – online, and through email – while also demanding that such methods of communication are somehow a burden, or improper in its case. This Court should follow the well-settled precedent that allows for electronic service of process where, as in this case, it is authorized under Rule 4, not prohibited by the Hague Convention, and the Plaintiff would be undoubtably burdened with an impossible task if such method was not allowed by the court.

## IV.    Conclusion

For the foregoing reasons, this Court should deny Defendant GuangZhouYangZhuShangMaoYouXianGongSi,("Defendant")'s Motion to Dismiss under Fed. R.Civ. P. 20(a)(2) and 12(b)(5) in full.

Dated: January 29, 2025

Respectfully submitted,

/s/ *Sofia Quezada Hastings*
Sofia Quezada Hastings

***One of the Attorneys for Plaintiff, Michael Salcedo***

Matthew De Preter
Sofia Quezada Hastings
ARONBERG GOLDGEHN DAVIS & GARMISA
225 W. Washington St. Suite 2800
Chicago, IL 60606
312-755-3139
cdepreter@agdglaw.com
shastings@agdglaw.com

8